

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

Signed February 1, 2008                                       **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| JEFFREY TODD VAN DERMARK, § | CASE NO. 06-35493-BJH-13 |
| § | |
| Debtor. § | |

### MEMORANDUM OPINION and ORDER

Jeffrey Todd Van Dermark (the "Debtor") filed a voluntary petition for relief under Chapter 13 on December 8, 2006. Before the Court is the Debtor's objection to the claim of Laurie Van Dermark ("Van Dermark"), the Debtor's ex-wife. The Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B). For the reasons set forth below, the objection to Van Dermark's claim is overruled.

### I.    Factual Background

The Debtor and Van Dermark were divorced in the Superior Court of Coweta County in the

**Memorandum Opinion and Order**

State of Georgia (the "Georgia State Court") prior to the Debtor's bankruptcy filing. Ex. 1. Van Dermark was represented in the divorce by the law firm of Rosenzweig, Jones & McNabb (the "Firm"). Pursuant to the terms of the agreement between Van Dermark and the Firm, Van Dermark was required to pay the Firm's invoices upon their receipt. Ex. 2.

On November 17, 2006, the Georgia State Court entered a Final Judgment and Decree of Divorce, *nunc pro tunc* to September 13, 2006 (the "Divorce Decree"). Section 10 of the Divorce Decree provides that the Debtor "shall also be responsible for paying [the Firm] $25,000 attorneys' fees for [Van Dermark] within 90 days of the date of this Order." Ex. 1, § 10.

However, the Firm requested that Van Dermark pay the Firm (in accordance with her contractual agreement with the Firm) and that she then collect the $25,000 directly from the Debtor. Ex. 2. Van Dermark agreed, and paid the Firm's fees, in their entirety, on December 7, 2006 (the day before the Debtor's bankruptcy filing).[1] According to Van Dermark, at the time she paid the Firm, the Firm orally assigned to her the right to collect from the Debtor the $25,000 that the Debtor had been ordered to pay in the Divorce Decree. However, that assignment was not reduced to writing until December 18, 2007, *see* Ex. 2 (the "Assignment"), shortly before the hearing on the Debtor's objection to Van Dermark's claim. The Assignment recites that an oral assignment of the right to collect $25,000 took place on December 7, 2006, over a year earlier, when Van Dermark paid the Firm's fees. The Assignment also purports to assign to Van Dermark "retroactively effective to December 7, 2006, any and all claims and legal rights under the Divorce Decree to collect $25,000 from Jeffrey Van Dermark." Ex. 2.

---

[1] The amount paid by Van Dermark included the $25,000 that the Debtor had been ordered to pay to the Firm on Van Dermark's behalf. Ex. 2.

The day after Van Dermark paid the Firm's fees, the Debtor filed his petition for bankruptcy relief in this Court. On Schedule E, the Debtor listed Van Dermark as a creditor holding a priority domestic support obligation claim, but he did not list any amount owing to her, and he indicated that she was listed for "notice only." On Schedule F, the Debtor listed the Firm as being owed a $25,000 unsecured claim for attorneys' fees.

On March 6, 2007, Van Dermark filed a timely proof of claim for $25,000, which was assigned Claim No. 5 on the Court's claims register ("Claim 5").[2] Claim 5 was filed as an unsecured, priority claim pursuant to 11 U.S.C. § 507(a)(1)(A), as Van Dermark argues it is a "domestic support obligation" under the Bankruptcy Code. *See* 11 U.S.C. § 101(14A).

On October 19, 2007, the Chapter 13 Trustee (the "Trustee") filed the "Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (If Required)" (the "TRCC"), in which the Trustee asserted that the $25,000 claim scheduled as being owed to the Firm should be disallowed on the ground that no proof of claim had been filed. The Trustee also recommended that Claim 5 be allowed, but be paid "direct by Debtor."

Van Dermark objected to the TRCC. She asserted that 11 U.S.C. § 1322(a)(2) requires that the Debtor's plan provide for the full payment of all claims entitled to priority under Section 507, unless the holder of the claim agrees to a different treatment, and that she had not agreed to accept treatment of her claim outside the plan. The Debtor also objected to the TRCC (on grounds unrelated to the Trustee's proposed treatment of Claim 5) and objected to Claim 5, alleging that it should be disallowed because "Debtor is not indebted to this claimant. Claim should be Disallowed

---

[2] Van Dermark's proof of claim appears as Claim 5 on the *Court's* claims register. Apparently, the Chapter 13 Trustee maintains his own claims list, and Van Dermark's claim is denominated by the Trustee as Claim 26.

**Memorandum Opinion and Order**       **3**

[sic] in its entirety."

The Court held a hearing on the Debtor's objection to Claim 5 on December 20, 2007. As noted previously, two days before that hearing, Van Dermark obtained the Assignment, which she argued memorialized her prior oral assignment. Faced with the Assignment at the December 20, 2007 hearing, the Debtor then argued that Claim 5 is not entitled to priority status under Section 507(a)(1). Because that argument had not previously been raised, the Court granted the parties' request to file post-hearing briefs. The last of the post-hearing briefs was filed on January 7, 2008, following which the Court took the Debtor's objection to Claim 5 under advisement. However, the Court had further questions to ask of the parties after reviewing those briefs, and thus the Court held a further telephonic hearing on January 14, 2008.

## II.    The Parties' Arguments

The Debtor's arguments have evolved in light of the Assignment.[3] As it currently stands, the Debtor argues that Claim 5 is not entitled to priority under Section 507(a)(1) for the simple reason that the claim for attorneys' fees was awarded to the Firm, and that Van Dermark, as assignee of the Firm, can obtain no greater rights than the Firm held when the claim was assigned, even though she is the Debtor's former spouse. Section 507(a)(1) gives first priority to allowed unsecured claims for

---

[3] The Debtor's initial claim objection asserted that the Debtor was not indebted to Van Dermark at all. Once the Assignment was produced, the Debtor conceded at the December 20, 2007 hearing that the Assignment had taken place on December 18, 2007. In his post-hearing brief, the Debtor continued to assert that Van Dermark did not own the claim on the date that Claim 5 was filed, and that she had only taken an assignment from the Firm shortly before the December 20, 2007 hearing. *See Br. In Supp. Of Debtor's Obj. To Claim . . . of Laurie Van Dermark*, ¶¶ 3, 4 and 8. That assertion called into question the validity of the purported oral assignment in 2006 and the validity of the purported retroactive assignment as set forth in the Assignment itself. However, at the January 14, 2008 hearing, the Debtor conceded the existence of a pre-petition assignment, thus eliminating the need to rule upon those two issues. Audiotape of hearing 1/14/08, at 3:10:17-3:11:28. The Debtor now argues that because the Firm is not one of the entities described in Section 507(a)(1), it held a mere unsecured claim, and so that is what Van Dermark received when she took the Assignment pre-petition.

**Memorandum Opinion and Order**                                                                                      **4**

domestic support obligations that, as of the date of the filing of the petition . . . are *owed to or recoverable by a spouse, former spouse, or child or the debtor, or such child's parent, legal guardian, or responsible relative . . . .*" As the Firm is none of these entities, the Debtor argues that the Firm was never entitled to priority and therefore, as the Firm's assignee, neither is Van Dermark. The Debtor also argues that the Firm is not an entity that can assert a claim for a "domestic support obligation" as that term is defined in Section 101(14A) of the Bankruptcy Code.

In contrast, Van Dermark argues that on the date of the Debtor's bankruptcy filing, the debt in question was (i) owed to her (by virtue of the Assignment) as required by Section 507(a)(1), and (ii) the debt was "recoverable by" her "both because she owned the claim and by virtue (or as recognized) [sic] of the operation of 11 U.S.C. § 501(b) which allows a person co-liable with the Debtor to file a proof of the claim if the primary claim holder does not do so." Moreover, Van Dermark points out that the Fifth Circuit has previously held that "an award of attorneys' fees to the law firm of the debtor's child's mother in a state court paternity proceeding met the § 523(a)(5) requirement that the debt be 'to a spouse, former spouse or child of the debtor.'" *Br. In Supp. Of Priority Claim of Laurie Van Dermark*, p. 5.

### III.   Legal Analysis

After carefully considering the parties' arguments, the Court concludes that they are largely irrelevant, as the dispute surrounding the Assignment is of no real consequence. Rather, the Court concludes that under the Bankruptcy Code's extremely broad definition of the term "claim" and Georgia law,[4] Van Dermark held a direct claim against the Debtor on the date the Divorce Decree was

---

[4] Neither party addressed any state law issues in their pleadings or at the December 20, 2007 hearing. Nevertheless, the Court asked the parties at the January 14, 2008 hearing which state's law this Court would look to in resolving any such issues. Both parties agreed that to the extent the Court found state law relevant, the Court

**Memorandum Opinion and Order**                                                                                                                          **5**

signed.[5] In other words, Van Dermark was a "creditor" of the Debtor long before the Assignment was ever made orally or reduced to writing and executed.[6]

The Court comes to this conclusion for the following reasons. First, the Bankruptcy Code defines the term "debt" as meaning "liability on a claim." 11 U.S.C. § 101(12). The term "claim" is defined in the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). This definition of the term "claim" is intentionally broad. *See In re Egleston*, 448 F.3d 803, 812 (5th Cir. 2006) (noting that Congress intended to adopt the "broadest available" definition of the term "claim," encompassing all legal obligations of the debtor, no matter how remote or contingent). State law determines the substance of claims; the validity of a creditor's claim against a debtor at the time the bankruptcy petition is filed is determined by reference to state law. *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 529 (5th Cir. 2004).

As relevant here, under Georgia's domestic relations law,

> (a) The grant of attorney's fees as part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be:
>
>> (1) Within the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party; and

---

should look to Georgia law.

[5] The Court expresses no view about whether the Divorce Decree could be effective *nunc pro tunc*, as it recited. At the very *latest*, it was effective on the date it was signed.

[6] The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10).

**Memorandum Opinion and Order**                                                                 **6**

> (2) A final judgment as to the amount granted, whether the grant is in full or on account, which may be enforced by attachment for contempt of court or by writ of fieri facias, whether the parties subsequently reconcile or not.
>
> * * *
>
> (c) An attorney may bring an action in his own name to enforce a grant of attorney's fees made to him pursuant to this Code Section.

Ga. Code Ann. § 19-6-2 (West 2007). Therefore, while an attorney *may* bring an action in his own name to enforce an award of attorneys' fees in a divorce action, the divorce decree itself is a final judgment in favor of the spouse who is awarded the fees. Van Dermark was awarded $25,000 of attorneys' fees in the Divorce Decree which, under Georgia law, constituted a final judgment in her favor for $25,000. According to the statute, Van Dermark could enforce that judgment by writ of *fieri facias*, *see* Ga. Code Ann. § 19-6-2(a)(2), which, under Georgia law, is a writ of execution, issued to a sheriff, constable or a marshal authorizing and directing him to execute upon a judgment of the court. *Grant v. Newsome*, 411 S.E.2d 796 (Ga. App. 1991).

In light of Georgia's statutory scheme, the Court concludes that the Divorce Decree granted Van Dermark a "right to payment" from the Debtor in her own right, independent from any right taken pursuant to the Assignment. Accordingly, Van Dermark held a "claim" against the Debtor as defined by the Bankruptcy Code on the date the Divorce Decree was signed and the Debtor owed a "debt" to his former spouse on that same date.[7]

---

[7] Alternatively, Van Dermark held a right to equitable subrogation under Georgia law when she paid the Firm the day before the Debtor's bankruptcy filing. *Bryant v. Cole*, 266 Ga. 535 (Ga. 1996). In the *Bryant* case, the parties divorced and incorporated into their judgment an agreement by which the husband was to pay the mortgage payments on a condominium. The wife thereafter sold the condominium and satisfied the mortgage from the sale proceeds. The husband asserted that his obligation to pay the mortgage therefore ended with the satisfaction of the mortgage on the condominium. The Georgia Supreme Court held that the wife, "having paid the indebtedness on the condominium has a right to equitable subrogation and is entitled to the payments [the husband] would have otherwise been obligated to make to the bank." *Bryant*, at 536. Here, even if the Court were to hold that the obligation to pay $25,000 ran solely to the Firm and not to Van Dermark, Van Dermark would have the right to payment from the Debtor (or a bankruptcy "claim") once she paid the Firm herself, through equitable subrogation. For either reason,

However, that conclusion does not end the inquiry because Section 507(a)(1) accords first priority status to an unsecured claim owed to a former spouse only if it is a "domestic support obligation." The term "domestic support obligation" is newly defined in the Bankruptcy Code as a result of the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 101(14A) of the Bankruptcy Code now defines a "domestic support obligation" as

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt, as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
> (A) owed to or recoverable by –
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record; or
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a governmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Here, Van Dermark timely filed Claim 5 and indicated it represented a "domestic support obligation." That timely filed proof of claim constitutes prima facie evidence of the validity and amount of the claim, Fed. R. Bankr. P. 3001(f). Accordingly, a party filing a proof of claim is

---

the Assignment is not the only legal basis for Van Dermark's claim against the Debtor.

**Memorandum Opinion and Order** 8

deemed to have established a prima facie case against the debtor's assets, and will "prevail unless a party who objects to the proof of claim produces evidence to rebut the claim. Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006). Moreover, a proof of claim is allowed unless a party in interest objects. 11 U.S.C. § 502(a).

The Debtor's sole challenge to Van Dermark's claim (Claim 5) is that it is not entitled to priority because she obtained it through the Assignment from the Firm (which is not a spouse, former spouse or child of the Debtor).[8] In other words, the Debtor challenges only the first prong of the test set forth in Section 101(14A) – *i.e.*, whether the debt was "owed to or recoverable by a spouse, former spouse or child of the debtor . . . ." 11 U.S.C. § 101(14A)(A)(i). That objection is overruled for the reasons set forth above. Because no other objection was raised by the Debtor to Claim 5 – *i.e.*, the remaining prongs set forth in § 101(14A)(B), (C), and (D) – the Court concludes that Claim 5 must be allowed as filed. Van Dermark's claim represents a "domestic support obligation" within the meaning of Section 101(14A) and it is therefore entitled to priority under Section 507(a)(1).[9]

---

[8] The Court confirmed during the course of its questioning of the parties on January 14, 2008 that this was the sole basis for the Debtor's objection to Van Dermark's claim.

[9] Although the Debtor has not challenged the character of the debt to Van Dermark, *i.e.*, is it in the nature of alimony, maintenance or support, the Court notes that under Georgia law, the purpose of an award of attorneys' fees to a spouse in a divorce action is to ensure effective representation of both spouses so that all issues can be fully and fairly resolved. *Johnson v. Johnson*, 396 S.E.2d 234 (Ga. 1990); *Cothran v. Mehosky*, 649 S.E.2d 838 (Ga. App. 2007). Therefore, the Georgia courts have held that awards of attorneys' fees in divorce and alimony cases constitute a component of alimony. *Sprague v. Sprague*, 253 Ga. 485 (Ga. 1984). Although federal bankruptcy law, not state law, determines whether a debt is in the nature of alimony, maintenance or support, *In re Hudson*, 107 F.3d 355 (5th Cir. 1997), Georgia bankruptcy courts have concluded that awards of attorneys' fees in divorce cases constitute debts for alimony, maintenance or support. *See, e.g., In re Robinson*, 193 B.R. 367 (Bankr. N.D. Ga. 1996) (Georgia law requires divorce court to base any award of fees primarily upon the respective finances of the parties, so an award may properly be interpreted as a support obligation); *In re Rogers*, 164 B.R. 382 (Bankr. N.D. Ga. 1994) (ruling that collection of attorneys' fees awarded in divorce case was excepted from the automatic stay under 11 U.S.C. §

**Memorandum Opinion and Order** 9

### END OF MEMORANDUM OPINION AND ORDER ###

---

362(b)(2)).

**Memorandum Opinion and Order** 10